**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT MERRILL and CYNTHIA MERRILL, h/w** | : | |
| | : | **CIVIL ACTION NO. 25-6994** |
| **v.** | : | |
| **ALLSTATE INSURANCE COMPANY** | : | |

**MEMORANDUM OPINION**

**HENRY, J.** **AUGUST 25, 2026**

## I. BACKGROUND

This case arises from an auto accident that occurred on April 19, 2014. ECF No. 11 ("Am. Compl."). Husband-plaintiff, Mr. Merrill ("Merrill"), was struck and injured while driving through an intersection in Berks County, Pennsylvania. Am. Compl. at ¶10. At the time of the accident, Merrill's vehicle was insured under both an auto policy and a separate household policy issued by Allstate. *Id.* at ¶12. Merrill's Allstate policies provided $100,000 each accident stacked across six household vehicles for a total of $600,000 in available underinsured motorist ("UIM") coverage. *Id.* Merrill eventually put Allstate on notice of a claim for said UIM benefits.[1]

With Allstate's consent, Merrill settled with the tortfeasor for the available bodily injury liability limits under the tortfeasor's policy of $250,000. *Id*. at ¶¶ 27-28. Believing his claim to be worth more than what he had recovered from the tortfeasor, on June 26, 2020, Merrill submitted a demand to Allstate for the available UIM coverage limits. *Id*. at ¶ 29. Allstate did not

[1] Merrill alleges that Allstate originally informed him that he had $400,000 in UIM benefits, then approximately two years later, stated that his UIM limits were $600,000. Am. Compl. at ¶¶ 32, 35. Allstate explains in its memorandum in support of its motion to dismiss that Merrill had two different policies, one that insured four vehicles with UIM limits of $100,000 each and a household policy that contained an additional $200,000 of stacked UIM coverage. ECF No. 13, Memorandum of Law in Support at p. 3 ("MOL").

pay the UIM policy limits, so Merrill commenced litigation in the Court of Common Pleas of Berks County on October 21, 2020. MOL, Ex. C. On July 8, 2021, Merrill, through his counsel, demanded the UIM limits again, and on December 13, 2022, Allstate offered Merrill $279,111.00. Am. Compl. at ¶¶ 34, 36.

On January 18, 2023, Merrill demanded $500,000.00, and on March 20, 2023, Allstate offered $349,000.00 to Merrill in "full and final settlement" of his claim. *Id*. at ¶¶ 37, 40. On May 12, 2023, Merrill's counsel provided Allstate with a supplemental expert medical report and on May 24, 2023, Merrill increased his demand to $600,000. *Id.* at ¶¶ 43-44. On May 26, 2023, Allstate informed Merrill that "the records would be reviewed by its expert and Plaintiffs' counsel will be advised if the offer to settle would be increased." *Id.* at ¶ 45. Allstate did not increase its offer, and the parties agreed to arbitrate the matter. On June 8, 2023, an arbitration award in the amount of $1,382,518.14 reduced by $250,000 received from the tortfeasor was entered in favor of Merrill. *Id*. at ¶ 49. There is no dispute that Allstate then paid the policy limits.

Merrill commenced the instant action in the Court of Common Pleas of Philadelphia County by filing a Writ of Summons on June 6, 2025, and then a Complaint on November 14, 2025, alleging statutory bad faith under 42 Pa.C.S. § 8371, common law bad faith, a violation of the UTPCPL and breach of contract. Allstate then removed the matter to this Court on December 12, 2025. After Allstate filed a motion to dismiss, Merrill filed an Amended Complaint, which is the operative pleading in this matter, setting forth statutory bad faith, common law bad faith and breach of contract claims. Allstate now moves to dismiss the Amended Complaint in its entirety.

## II. <u>LEGAL STANDARD</u>

Motions to dismiss are governed by Federal Rule of Civil Procedure 12(b)(6). If a plaintiff fails to state a claim upon which relief can be granted, the court may dismiss the action. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss . . . Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id*. at 678-79. A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc*., 662 F.3d 212, 220-21 (3d Cir. 2011) (*citing Iqbal*, 556 U.S. at 678).

In *Connelly v. Lane Construction Corp*., 809 F.3d 780, 787 (3d Cir. 2016), the Third Circuit instructed district courts to apply a three-step analysis to 12(b)(6) motions: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." (*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

## III. DISCUSSION

In its Motion to Dismiss, Allstate argues that Merrill's claims for statutory bad faith, common law bad faith and breach of contract are all time-barred, that Merrill's breach of contract claims should be dismissed because he fails to plead recoverable damages and that

Merrill's statutory bad faith claim should be dismissed because it lacks specificity. Merrill counters that his claims are timely, that he properly pled damages and that his bad faith claim is sufficiently specific. I will address each argument in turn and grant Allstate's motion in part and deny it in part.

**A. Statute of Limitations**

There is no dispute that a statutory bad faith claim brought under 42 Pa.C.S. § 8371 is subject to a two-year statute of limitations, while both a common law bad faith claim and a breach of contract claim have a four-year statute of limitations. *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F.Supp.2d 354, 365 (E.D. Pa. Feb. 3, 2009). However, the parties do dispute when the statute of limitations in this case began to run. Allstate argues that it began to run in September of 2020 when Merrill allegedly rejected Allstate's settlement offer and first mentioned a potential bad faith claim. MOL at 10.[2] Merrill argues that the statute of limitations in a bad faith claim based on a delay in payment begins to run when payment is finally made by the insurer, and therefore, it began to run in this case when Allstate paid the June 8, 2025, arbitration award. ECF No. 14, Merrill's Memo in Opposition ("Opp.") at 7.

A statutory bad faith claim accrues "when the insurer first denies the insured benefits." *Gordon v. LM Gen. Ins. Co.*, No. 23-479, 2023 WL 2975869, at *4 (E.D. Pa. Apr. 17, 2023), *aff'd*, No. 23-1887, 2024 WL 4380137 (3d Cir. Oct. 3, 2024). Further, the Pennsylvania Superior Court has stated that "a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined." *Adamski v. Allstate Ins. Co.,* 738 A.2d 1033, 1042

[2] The parties dispute whether I may consider a September 8, 2020, email from Merrill's attorney to Allstate in which bad faith is first mentioned, as that correspondence was not attached to the Amended Complaint. Allstate argues that Merrill's claims are "based on" this email and therefore, it is integral to the Amended Complaint and should be considered, while Merrill argues that this email is a matter outside the pleadings and should not be considered in a motion to dismiss. As I find that this document is irrelevant to the analysis of when the statute of limitations began to run in this matter, I do not need to resolve the dispute regarding this correspondence.

(Pa. Super. 1999). "For purposes of applying Section 8371, one must look to the date on which the defendant insurance company first denied the insured's claim in bad faith." *Id*. at 1040. The Third Circuit relied on *Adamski* when addressing the statute of limitations in a bad faith claim and stated that "[a] bad faith claim arises upon a 'frivolous or unfounded refusal to pay proceeds of the policy.'" *Sikirica v. Nationwide Ins. Co*., 416 F.3d 214, 225 (3d Cir. 2005) (*quoting Adamski*, 738 A.2d at 1036)).

In determining when the statute of limitations on Merrill's bad faith claim began to run, I first reject Merrill's argument that it did not begin to run until Allstate paid the policy limits pursuant to the June 8, 2023, arbitration award. In support of this argument, Merrill relies on two federal court cases, *Thomas v. State Farm Ins. Co.*, No. 99-2268, 1999 WL 1018279, at *4 (E.D. Pa. Apr. 25, 1999), and *Estate of Schoch v. Amerisure Ins. Co.*, No. 99-6254, 2000 WL 502700, at *2 (E.D. Pa. Apr. 25, 2000). Both *Thomas* and *Schoch* support Merrill's argument that a claim for bad faith delay in payment accrues when payment is made; however, this argument has been specifically rejected by courts in this district, as well as by the Third Circuit.

In *Gordon v. LM Gen. Ins. Co.,* No. 23-1887, 2024 WL 4380137, at *2 (3d Cir. Oct. 3, 2024), the Third Circuit rejected the insureds' argument that the statute of limitations did not begin to run on their bad faith claim until payment was made. *Id*. at *2 n. 5. The Third Circuit further found that *Thomas* and *Schoch* "are not persuasively reasoned" and declined to follow them. *Gordon*, at *2 n. 5 (examining *Thomas,* 1999 WL 1018279 at *4 and *Estate of Schoch,* 2000 WL 502700 at *2). *See also Ike v. Travelers Prop. Cas. Co. of Am*., No. 23-4498, 2025 WL 1116527, at *5 (E.D. Pa. Apr. 15, 2025) (agreeing with the Third Circuit that district court opinions that found a statutory bad faith claim does not accrue until payment is made "'are not persuasively reasoned' and defy the clear command of *Adamski*" (citing *Gordon*, 2024 WL

4380137, at *2 n. 5.)) Based on the Third Circuit's decision in *Gordon* and a review of *Thomas* and *Schoch*, I also find those two cases are not persuasive authority and therefore the statute did not begin to run when the arbitration award was **paid** by Allstate sometime after the June 8, 2023, arbitration award.

Next, I must examine Allstate's argument that the statute of limitations began to run on September 8, 2020, when Merrill's counsel first allegedly mentioned bad faith, or in October of 2020 when Merrill filed a UIM claim in the Court of Common Pleas of Berks County. To determine when Merrill's bad faith claim accrued, I must decide when Allstate "unequivocally refuse[d] to pay [Merrill] the full policy limit." *Ike*, 2025 WL1116527, at *4. In other words, when was Merrill on notice that Allstate would not pay him the full amount to which he believed he was entitled? That date is when Merrill's bad faith claim actually accrued.

Looking at the timeline set forth in Merrill's Amended Complaint, it is clear that the parties were engaged in continuing negotiations and that Allstate had not reached a final position on the claim's value until at least the commencement of the June 6, 2023, arbitration. Prior to that date, there was no denial of coverage to Merrill and therefore no injury. Rather, Merrill and Allstate were still negotiating about how much coverage Merrill should receive.

According to the Amended Complaint, Allstate offered $349,000 as late as March 20, 2023, and in response to a supplemental expert report produced by Merrill, stated on May 26, 2023, that it would advise Merrill's counsel if its offer of settlement would be increased. As of 10 days before the arbitration hearing, the parties were still involved in active settlement negotiations, so Allstate's position could not yet be considered final, and the statute could not have started to run. I find that the statute of limitations did not begin to run until June 6, 2023, when the arbitration commenced, as at that point, Allstate's position regarding the value of

Merrill's claim became final and no settlement for the full policy limits was going to occur. Merrill's statutory bad faith claim is therefore timely filed, as he commenced the instant action via a Praecipe for Writ of Summons in the Court of Common Pleas of Philadelphia County on June 6, 2025, two years after Merrill's bad faith claim arose. See *Bowers v. Nationwide Ins. Co.*, No. 07-1134, 2008 WL 189572, at *3 (M.D. Pa. Jan. 18, 2008) (finding that the statute of limitations in a bad faith matter did not begin to run until the parties' arbitration hearing in the underlying UIM claim, as an earlier offer far below Plaintiff's expectations is not a denial of coverage that would cause the statute of limitations to begin to run.) In addition, since breach of contract and common law bad faith have a four-year statute of limitations, both of those claims were clearly timely filed as well.

**B. Breach of Contract Damages**

Next, Allstate argues that Merrill's claim for breach of contract must be dismissed because Merrill has failed to plead any cognizable contract damages since Allstate paid Merrill the full policy limits as a result of the arbitration award. MOL at 14. In response, Merrill argues that he properly pled damages recoverable for an insurer's breach of contract, which are not limited to policy proceeds but may include consequential damages. Opp. at 10-11.

A party asserting a breach of contract claim in Pennsylvania must show (1) the existence of a contract; (2) a breach of duty imposed by the contract; (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 255 (3d Cir. 2003) (cleaned up). Generally, there can be no breach of contract claim when an insurer has paid out the proceeds of an insurance policy, as the insured has received that to which she is entitled pursuant to the policy. *Smith v. Allstate Ins. Co.*, 904 F.Supp.2d 515, 521 (W.D. Pa. Oct. 24, 2012). In the situation where an insured sues for damages stemming from an insurer's alleged bad faith claims handling however, the "damages

sought may be different from the damages compensated by payment pursuant to the insurance policy and therefore may not be remedied by such payment." *Id.*

A review of the Amended Complaint shows that Merrill has pled damages beyond the policy proceeds. Although not artfully pled, the allegations under Count III for breach of contract do claim that Merrill has suffered damages including "loss of use of the funds rightfully due to Plaintiffs" and "other consequential damages resulting from Defendant's breach." Am. Compl. at ¶ 115. Merrill may not seek legal fees and related expenses as damages in this breach of contract action as there is no statutory or contractual basis for him to do so, but he may seek other consequential damages. *See Koerner v. GEICO Cas. Co.*, No. 17-455, 2017 WL 2588598, at *9 (M.D. Pa. June 14, 2017). Accordingly, Allstate's motion is denied as to Merrill's breach of contract claim.

**C. Legal Sufficiency of Statutory Bad Faith Claim**

Lastly, Allstate argues that dismissal of Merrill's statutory bad faith claim is warranted because a genuine valuation dispute between Allstate and Merrill cannot be bad faith, and due to Merrill's barebones, conclusory allegations of bad faith. Upon review of the Amended Complaint in this matter, I find that Merrill's allegations lack specificity and must be dismissed, but he will be given leave to amend.

"In order to show bad faith on the part of an insurer under [42 Pa.C.S. § 8371], an insured must demonstrate that (1) the insurer did not have a reasonable basis for denying benefits under the relevant policy, and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the insured's claim." *Carr v. Travelers Home & Marine Ins. Co.*, 700 F. Supp. 3d 288, 295 (E.D. Pa. 2023) (*citing Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017)). Bad faith can be shown by a frivolous or unfounded refusal to pay a claim, lack of investigation

into the facts of a claim, or failure to communicate with a claimant. *Id.* (internal citations omitted). It may also exist where the insurer delayed in handling the claim. *See White v. Travelers Ins. Co.*, No. 20-2928, 2020 WL 7181217, at *4 (E.D. Pa. Dec. 7, 2020).

As to the second element of a bad faith claim, the standard is higher than "mere negligence or bad judgment." *Id.* (internal citations omitted). In cases alleging delay in handling the claim, "the mere existence of the delay itself is insufficient." *Id.* "Rather, a court must look to facts from which it can infer the defendant insurer 'knew it had no reason to deny a claim; if [the] delay is attributable to the need to investigate further or even simple negligence, no bad faith has occurred.'" *White v. Travelers Ins. Co*., 2020 WL 7181217 at * 4 (internal citations omitted). The length of the delay is relevant to an inference of knowledge or reckless disregard. *Id*.

Merrill's bad faith claim against Allstate generally alleges, among other things: (1) Allstate failed in investigating and evaluating Merrill's claim; (2) Allstate failed to act promptly on Merrill's claim and its investigation; (3) Allstate failed to promptly settle the claim; (4) Allstate misrepresented facts and policy and contractual provisions; (5) Allstate failed to provide medical information to its expert witness; (6) Allstate failed to provide timely updates and requested information to Merrill; and (7) Allstate harassed Merrill with unreasonable information requests. Am. Compl. at ¶ 98. Altogether, Merrill's Amended Complaint lists 36 ways in which Allstate allegedly acted in bad faith.[3]

First, to the extent that Merrill's bad faith claim amounts to a complaint that Allstate disagreed with Merrill's valuation of his claim, this does not give rise to bad faith. "[B]ad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's

[3] I note that numerous sub-paragraphs in paragraph 98 of the Amended Complaint are duplicative, either in whole or in part. If Merrill chooses to file a Second Amended Complaint setting forth his bad faith allegations with more specificity, he is instructed to eliminate the duplicate sub-paragraphs. *See* ¶¶ 98d and 98aa; 98f and 98bb; 98g and 98cc; 98h and 98dd; 98k and 98ff.

damages." *West v. State Farm Ins. Co*., No. 16-3185, 2016 WL 4264240, at *2 (E.D. Pa. Aug. 11, 2016) (*quoting Johnson v. Progressive Ins. Co*., 987 A.2d 781, 784 (Pa. Super. Ct. 2009)).

As to Allstate's argument that the Amended Complaint does not contain sufficient factual support to set forth a plausible statutory bad faith claim, I must agree. I find that Merrill's Amended Complaint is deficient as it fails to include specific facts regarding Allstate's actions that would support a bad faith claim. Despite setting forth 36 sub-paragraphs that allegedly delineate Allstate's bad faith conduct, Merrill has failed to plead specific facts showing that Allstate acted in bad faith. "A plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." *Toner v. GEICO Ins. Co*., 262 F.Supp.3d 200, 208 (E.D. Pa. 2017) (citations omitted). Courts in this Circuit regularly dismiss bad faith claims that recite only bare-bones conclusory allegations without sufficient factual specificity. *Lauzier v. State Farm Auto. Ins. Co.,* No. 26-2752, 2026 WL 2149715, at * 4 (E.D. Pa. July 27, 2026); *McGuigan v. American Strategic Ins. Corp*., No. 25-1553, 2025 WL 1943389, at *3 (July 15, 2025); *Brown v. LM Gen. Ins. Co*., No. 21-2134, 2021 WL 3809075, at *3 (E.D. Pa. Aug. 24, 2021); *Satterfield v. Government Ins. Employees Co.*, No. 20-1400, 2020 WL 7229763, at *2 (E.D. Pa. Dec. 8, 2020).

Although Merrill has alleged numerous conclusory statements, he needs to set forth "the Five W's – the who, what, where, when, why – and how [Allstate]'s conduct plausibly constitutes bad faith." *Satterfield*, 2020 WL 7229763 at * 2. Specifically, Merrill has not alleged any facts that would explain how Allstate failed to "investigate the claim," or "consider the claim," what facts and policy provisions Allstate allegedly misrepresented relating to the insureds' duties, what deceptive and misleading statements Allstate made, what policy provisions it misinterpreted, what documentation it failed to timely provide to Merrill, etc. See Am. Compl. at ¶ 91.

I find that the vast majority of Merrill's bad faith allegations are legal conclusions and not facts. From the allegations pled by Merrill, I cannot plausibly infer that Allstate knew or recklessly disregarded a lack of reasonable basis to deny benefits. A mere "failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." *Smith v. State Farm Ins. Co.*, 506 F.App'x at 137. Accordingly, I will dismiss Merrill's claim for statutory bad faith but allow him to file an amended complaint that properly identifies Allstate's allegedly unreasonable conduct with more factual specificity.

## IV. CONCLUSION

For the foregoing reasons, Allstate's Motion to Dismiss will be granted in part and denied in part. Count I of Merrill's Complaint will be stricken but he will be given leave to amend.